UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EVANGELICAL COMMUNITY HOSPITAL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> XAVIER BECERRA, <br><br> Defendant. | Case No. 21-cv-01368 (APM) |

### MEMORANDUM OPINION

**I.**

Plaintiffs Evangelical Community Hospital ("Evangelical") and Memorial Healthcare Center ("Memorial") are two acute-care hospitals that participate in the Medicare program. Medicare funding is provided to Plaintiffs in the form of a reimbursement from the Centers for Medicare and Medicaid Services ("CMS"). To obtain a reimbursement, providers such as Plaintiffs submit a cost report to a Medicare contractor, who reviews the report and determines the amount of reimbursement to which the provider is entitled.

Plaintiffs each received four separate reimbursement determinations from their Medicare contractor covering the cost reporting periods ending in December 2008, 2009, 2010, and 2012 (for Memorial) and in June 2011, 2012, 2013, and 2014 (for Evangelical). Finding fault with the reimbursement determinations, Plaintiffs initiated a formal hearing process by making a request for a hearing ("RFH") before the relevant administrative body tasked with adjudicating Medicare reimbursement disputes, the Provider Reimbursement Review Board ("the Board"). Each of Plaintiffs' hearing requests raised four distinct issues, which were identical across all eight of the

hearing requests they made. One of those issues, what the parties referred to as "Issue 4," is the subject of the instant action.[1] While the scope and specificity of Issue 4 is contested, Issue 4 raised the specter of an "incorrect[] calculati[on]" made when determining Plaintiffs' entitlement to a Disproportionate Share Hospital payment—an additional reimbursement available to providers who serve a high percentage of low-income patients.

Through the administrative hearing process, Plaintiffs sought expedited judicial review ("EJR") of their claims—an expedited pathway to federal court, through which Plaintiffs can obtain review of questions of law over which the Board lacks authority. The Board denied Plaintiffs' EJR requests and dismissed Issue 4 from all eight appeals. The Board first determined that Plaintiffs' issue statements concerning Issue 4 in their RFH were overly vague, in violation of the agency's regulations and the Board's rules. The Board found, in the alternative, that to the extent Plaintiffs' RFH could be interpreted to encompass the more granular set of issues discussed in Plaintiffs' final moving papers before the Board, Plaintiffs' failure to raise those issues in their preliminary moving papers rendered the issues abandoned.

Plaintiffs filed suit before this court, asserting that the Board violated the Administrative Procedure Act ("APA") by (1) improperly narrowing the Board's jurisdiction, as determined by Congress in the Medicare Act; and (2) arbitrarily and capriciously applying the agency's regulations and the Board's rules to Plaintiffs' claims. Plaintiffs also seek a writ of mandamus for the same alleged violations. Defendant in this matter is Secretary of Health and Human Services Xavier Becerra, in his official capacity.

---

[1] In six of the eight appeals, Plaintiffs withdrew, transferred, or dismissed all other issues, aside from Issue 4, from the appeals. *See* Def.'s Cross-Mot. for Summ. J., ECF No. 18 [hereinafter Def.'s Cross-Mot.], at 8. In the other two appeals, Plaintiff Memorial transferred two issues from the appeals, leaving Issue 4 and one other issue active. *Id.*; *see also* Compl. for Jud. Review, ECF No. 1 [hereinafter Compl.], Ex. 1, ECF No. 1-1 [hereinafter Ex. 1], at 2 n.2. Plaintiff Memorial did not seek EJR on the other issue, and it is not before the court. Def.'s Cross-Mot. at 8–9; Ex. 1 at 2–5.

Before the court is Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. *See* Pls.' Mot. for Summ. J., ECF No. 16 [hereinafter Pls.' Mot.]; Def.'s Cross-Mot. for Summ. J., ECF No. 18 [hereinafter Def.'s Cross-Mot.]. As discussed below, Plaintiffs have failed to demonstrate that the Board acted in an arbitrary and capricious manner in denying Plaintiffs' EJR request. Accordingly, Defendant's Cross-Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment is denied.

## II.

Under the Medicare Prospective Payment System, hospitals that provide inpatient services to covered patients receive payment at a predetermined amount per discharged patient, irrespective of the actual costs the hospital incurs. 42 U.S.C. § 1395ww(d). However, the statute also provides for certain payment adjustments beyond the standard per patient payment.

The subject of Plaintiffs' RFH is an adjustment known as the Disproportionate Share Hospital adjustment. This additional reimbursement is available to hospitals that serve a disproportionate number of low-income patients. *See id.* § 1395ww(d)(5)(F). A provider's Disproportionate Share Hospital adjustment is determined by calculating the hospital's Disproportionate Patient Percentage—the sum of two fractions commonly known as the Medicaid Fraction and the Medicare-SSI Fraction. *See id.* § 1395ww(d)(5)(F)(vi). The Medicaid Fraction reflects the number of inpatient hospital days attributable to patients eligible for medical assistance under a state Medicaid plan but who are not entitled to Medicare Part A benefits. *Id.* § 1395ww(d)(5)(F)(vi)(II). The Medicare-SSI Fraction captures the number of inpatient hospital days attributable to patients who are entitled to both Medicare Part A and Supplemental Social Security Income ("SSI") benefits. *Id.* § 1395ww(d)(5)(F)(vi)(I).

At the close of each fiscal year, a hospital submits to a Medicare contractor a cost report that accounts for its costs during a particular reporting period. *See* 42 C.F.R. § 405.1801(b) (2022). The Medicare contractor is responsible for issuing a Notice of Program Reimbursement, which informs the provider of their final reimbursement payment for the fiscal year. *See id.* § 405.1803. If a provider is dissatisfied with the payment amount, then the provider may ultimately appeal to the Board via the administrative process set forth in the Medicare statute and attendant regulations. *See* 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835 (2022).

The Medicare statute lays out three jurisdictional prerequisites that must be met for the Board to have authority to hear an appeal:

> (1) [the] provider . . . is dissatisfied with a final determination of the Secretary as to the amount of the payment [they received];
>
> . . .
>
> (2) the amount in controversy is $10,000 or more; and
>
> (3) [the] provider files a request for a hearing within 180 days after notice of the intermediary's final determination.

42 U.S.C. § 1395oo(a).

Final decisions of the Board are subject to judicial review pursuant to the Medicare statute. *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875 (2022); *id.* § 405.1877 (2014). As relevant here, the statute also provides for EJR of a legal question if the Board has jurisdiction over the appeal but determines that it lacks the authority to decide the question of law. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842 (2022). Importantly, the Secretary and the Board establish the procedural rules governing appeals to the Board, which, as pertinent to this case, are discussed in greater detail below. *See generally* 42 C.F.R. §§ 405.1801–405.1873 (2022).

### III.

Under the APA, final agency action can be set aside only if it is "arbitrary, capricious, an abuse of discretion," "otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *Citizens to Pres. Overton Park, Inc., v. Volpe*, 401 U.S. 402, 413–14 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The Secretary's compliance with the Medicare statute and regulations is reviewable under the arbitrary and capricious standard, and the adequacy of record support for the Board's decision is reviewable under the substantial evidence standard, both of which "involve the same level of scrutiny." *Mem'l Hosp./Adair Cty. Health Ctr., Inc. v. Bowen*, 829 F.2d 111, 117 (D.C. Cir. 1987); *see* 42 U.S.C. § 1395oo(f)(1). Under the arbitrary and capricious standard, final agency action may be invalidated only if it is based on an unlawful interpretation of the statute or regulations or is "not rational and based on consideration of the relevant factors." *FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 803 (1978); *see HCA Health Servs. of Okla., Inc. v. Shalala*, 27 F.3d 614, 616–17 (D.C. Cir. 1994). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966).

### IV.

Plaintiffs advance two claims under the APA and also petition the court for a writ of mandamus. First, Plaintiffs assert that the Board's dismissal of Plaintiffs' Issue 4 claims was jurisdictional and improperly narrowed the Board's mandatory jurisdiction as set forth in the Medicare statute. In the alternative, Plaintiffs assert that the Board's application of its rules to the facts of their claims was arbitrary and capricious. Finally, Plaintiffs have petitioned the court for

a writ of mandamus stemming from the same facts upon which their APA claims are premised. The court will address each claim in turn.

### A.

The court begins with Plaintiffs' APA challenge asserting that the Board's decision improperly narrowed the Board's jurisdiction. Plaintiffs argue that the Board "characterized the dismissals as jurisdictional," and as such, "[t]he Board's dismissals impermissibly constrict[ed] Congress's jurisdictional mandate." Pls.' Reply in Supp. of Pls.' Mot., ECF No. 20 [hereinafter Pls.' Reply], at 1–2. Defendant counters that the Board's decision was not jurisdictional, but instead clearly rested on procedural grounds short of the merits. Def.'s Cross-Mot., Mem. of P. & A. in Supp. of Def.'s Cross-Mot., ECF No. 18, [hereinafter Def.'s Mem.], at 15–19. Defendant further argues that the Board's procedural rules are proper under the Medicare statute's "broad [grant of] authority to establish procedural rules for purposes of managing its substantial docket of appeals." Def.'s Mem. at 13. The court agrees with Defendant that the Board's dismissal of Plaintiffs' claims was on procedural, not jurisdictional, grounds and was appropriate under the Secretary's and Board's authority to establish procedural rules governing the appeals process.

The Board may set procedural rules governing its appeals docket that are "not inconsistent with the provisions" of the Medicare statute. 42 U.S.C. § 1395oo(e); *see Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 404 (1988). The Medicare statute vests the Board with "full power and authority to make rules and establish procedures, not inconsistent with the [statute] or regulations of the Secretary, which are necessary or appropriate to carry out the provisions of [the statute]." 42 U.S.C. § 1395oo(e). The Secretary's regulations also reflect the Board's authority to manage its docket. They provide that "[i]f a provider fails to meet a . . . requirement established by the

6

Board in a rule or order," the Board is empowered to "[d]ismiss the appeal with prejudice." 42 C.F.R. § 405.1868(b) (2022).

At issue in this case are the Board's rules regarding the form and substance of a provider's initial request to initiate the hearing process.  The regulations require that this initial request for hearing, or RFH, must provide an explanation of a provider's dissatisfaction "[f]or each specific item under appeal." *Id.* § 405.1835(b)(2).  Furthermore, the explanation for each specific item must address "[w]hy the provider believes [the] Medicare payment is incorrect" or why it "is unable to determine whether [the] Medicare payment is correct," as well as "[h]ow and why the provider believes [the] Medicare payment must be determined differently."  *Id.* § 405.1835(b)(2)(i)–(ii).

In addition, the Board's rules contain special content requirements for an RFH raising issues that contain multiple subcomponents.  In such cases, Board rules direct the provider to appeal "each contested component . . . as a separate issue and describe[] [it] as narrowly as possible." Def.'s Mot., Ex. A, ECF No. 18-1 [hereinafter Board Rules], § 8.1.  As an example, the Board rules specifically list an appeal challenging a Disproportionate Share Hospital payment adjustment—which was the subject of Plaintiffs' RFH—as a "common example[]" of an appeal involving issues with "multiple components." Board Rules § 8.2.

Nothing in the rules or regulations at issue modifies or supplements the jurisdictional requirements for Board appeals that Congress established in the Medicare statute.  The court notes its agreement with Plaintiffs that if the Board's decisions in these appeals were in fact jurisdictional, then they would plainly violate the APA.  And, to be fair, Plaintiffs are not without reason for thinking that the Board dismissed Issue 4 on jurisdictional grounds.  The Board did identify as one of the reasons for dismissal that it "lack[ed] the requisite jurisdiction under

7

42 C.F.R. § 405.1842(f)(2)." Compl., Ex. 1, ECF No. 1-1 [hereinafter Ex. 1], at 11.  But the court finds that, when its decision is read as a whole, the Board's references to the term "jurisdiction" are merely the "result of sloppy drafting" rather than an actual narrowing of the Board's jurisdiction.  *Akron Gen. Med. Ctr. v. Azar*, 414 F. Supp. 3d 73, 80 (D.D.C. 2019), *aff'd*, 836 F. App'x 13 (D.C. Cir. 2021) (citation omitted) (finding that the Board's jurisdictional references were best understood as a "loose[] and imprecise[] . . . kind of shorthand meaning 'disposing of an issue short of deciding its merits'").

The Board's decision states, in pertinent part, that the Board "dismisses the Issue 4—SSI Percentage issue . . . as the issue statement in the RFHs for these cases does not comply with the specificity requirements under 42 C.F.R. § 405.1835(b) and Board Rule 8." Ex. 1 at 11.  Elsewhere in the decision, the Board explains that § 405.1835(a)—the provision which lays out the Medicare statute's *jurisdictional* requirements—"describes the right to a Board hearing." *Id.* at 6.  The Board explained that, by contrast, § 405.1835(b) describes "the content requirements of a hearing request." *Id.*  In determining that Plaintiffs failed to satisfy one of the procedural requirements set out in § 405.1835(b), rather than a jurisdictional requirement set out in § 405.1835(a), the Board recognized its authority to dismiss the matters as a proper exercise of its discretion to dismiss an action on a procedural ground short of deciding its merits.  *See, e.g.*, *Akron*, 414 F. Supp. 3d at 80.

Courts in this District and several Circuits have affirmed various procedural rules by the Board as a proper exercise of the Board's authority under the Medicare statute, even when such rules result in the Board's dismissal of a provider's appeal.  *See, e.g.*, *id.* at 83–84 (upholding the Board's authority to dismiss issues that were not presented in accordance with the Board's procedural rules); *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342 (4th Cir. 2001); *Kaiser Found.*

8

*Hosps. v. Sebelius*, 649 F.3d 1153 (9th Cir. 2011); *High Country Home Health Inc., v. Thompson*, 359 F.3d 1307 (10th Cir. 2004).

Plaintiffs' comparison of the rules at bar to those found by the Supreme Court to be *ultra vires* in *Bethesda Hospital Association v. Bowen* is unavailing.  485 U.S. 399 (1988); *see also Banner Heart Hosp. v. Burwell*, 201 F. Supp. 3d 131 (D.D.C. 2016).  In *Bethesda*, the plaintiff hospitals challenged a regulation that disallowed coverage for certain malpractice insurance costs. 485 U.S. at 401.  Based on the regulation, only certain malpractice insurance costs were reimbursable; as a result, the plaintiff hospitals purposely omitted from their cost reports the costs that were not covered under the regulation.  *Id.*  The plaintiffs later made a timely request for a hearing before the Board in order to challenge the malpractice regulation and seek reimbursement for the costs that were not covered under it.  *Id.* at 401–02.  The Board in *Bethesda*, however, determined that it lacked jurisdiction to hear the plaintiffs' claims because the plaintiff hospitals had not included the contested figures on their annual cost reports.  *Id.* at 402.  The Board therefore found that the hospitals could not be "dissatisfied" with the contractor's determination, as required for jurisdiction under 42 U.S.C. § 1395oo(a).  *Id.*  The Supreme Court held that this reading of an exhaustion requirement into Congress's jurisdictional grant was unlawful, as it narrowed the Board's jurisdiction, in conflict with the statute.  *Id.* at 408.

Unlike *Bethesda*, however, the rules that the Board relied on to dismiss Plaintiffs' Issue 4 claims here do not seek to condition or narrow the three jurisdictional requirements set forth in 42 U.S.C. § 1395oo(a).  The relevant regulations and rules at issue are instead best understood as "claims processing" rules rather than rules that modify the scope of the Board's jurisdiction.  The Board's delegated authority includes the power to manage its "substantial backlog of cases" by "crafting . . . procedural rules" like those at issue here.  *Rapid City Reg'l Hosp. v. Sebelius*, 681

9

F. Supp. 2d 56, 60 (D.D.C. 2010). Because dismissal of a claim or appeal for failure to meet the procedural rules at issue is not inconsistent with the text or purpose of the Medicare Act, the Board did not violate the APA by narrowing the scope of its jurisdiction.

### B.

Plaintiffs also assert that, "[e]ven under the regulations and rules the agency seeks to invoke, the Board's dismissals were improper." Pls.' Reply at 5. Plaintiffs argue that their RFH was sufficient under the regulations because they identified the issue as "Medicare Fraction—SSI Percentage," and stated their belief that they were unable to determine the correct reimbursement calculation. *Id.* at 5–6. Defendant asserts that Plaintiffs' broad description of an issue topic that contains multiple subcomponents clearly fails the specificity requirement. Def.'s Reply in Supp. of Def.'s Cross-Mot., ECF No. 21 [hereinafter Def.'s Reply], at 8. Defendant posits that Plaintiffs themselves "effectively concede that their initial description of [Issue 4] did not . . . comply with Board Rule 8" by failing to address it. *Id.*

The Board acts reasonably, and not arbitrarily and capriciously, when it applies its "claims-processing rules faithfully to [a provider's] appeal." *Akron*, 414 F. Supp. 3d at 81. The regulations require that a RFH provide "[a]n explanation []for each specific item under appeal." 42 C.F.R. § 405.1835(b)(2). The Board rules further explain that "[s]ome issues may have multiple components," and that "[t]o comply with the regulatory requirement to specifically identify the items in dispute, each contested component must be appealed as a separate issue and described as narrowly as possible." Board Rules § 8.1. The Board rules also specifically delineate how a provider should address, as here, a challenge to a Disproportionate Share Hospital reimbursement. Board Rule 8.2 explains that an appeal challenging a Disproportionate Share Hospital payment adjustment is a "common example" of an appeal involving issues with "multiple components" that

10

must be appealed as "separate issue[s] and described as narrowly as possible." Board Rules §§ 8.1, 8.2.

Plaintiffs did not follow these rules. In their RFH, Plaintiffs described Issue 4 simply as follows: "The intermediary erred by incorrectly calculating the SSI percentage for inclusion in the 'Medicare Fraction' for purposes of the calculation of the provider's [disproportionate share] payment." Ex. 1 at 3. This description does not specify which portion of the calculation was incorrect nor how the fraction should have been calculated differently. Recall, a Disproportionate Share Hospital reimbursement is determined by calculating a provider's Medicare-SSI and Medicaid fractions, which make up the provider's Disproportionate Patient Percentage. The Medicare-SSI Fraction alone has multiple component parts that a provider could challenge. Plaintiffs did not specify which specific portion of the fraction they sought to challenge or what would have constituted correct data for the Disproportionate Share Hospital calculation. This provides sufficient basis to support the Board's dismissal. The Board's procedural rules empower the body to dismiss a provider's appeal when the provider's RFH or Preliminary Position Paper is deficient. *See* 42 C.F.R. § 405.1868(b); Board Rules § 41.2. Because Plaintiffs did not comply with the specificity requirement, the Board acted reasonably in dismissing their Issue 4 claims.

Finding sufficient record support for the Board's action, the court could end its inquiry here. But, for completeness, the court also holds that the Board's alternate ground for dismissal is adequately supported by the record.

In addition to finding that Plaintiffs' RFH lacked the requisite specificity, the Board also found that "even if [Issue 4] had [met the specificity requirement], [Plaintiff Memorial] effectively abandoned that issue in its entirety by filing perfunctory preliminary position papers that failed to

comply with" the rules governing Preliminary Position Papers. Ex. 1 at 11; Board Rules §§ 25, 25.1, 25.2.

In their Preliminary Position Papers, for Issue 4, Plaintiffs argued that "the intermediary and/or CMS erred in its calculation of the SSI percentage and its application to this Provider," and asserted that the Board had "ruled on this specific issue" in another (subsequently appealed) case, *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20 (D.D.C. 2008). Ex. 1 at 3–4. In their Final Position Papers, however, Plaintiffs delved into a detailed argument about (1) CMS's interpretation of the statutory term "entitled to benefits," and (2) Plaintiffs' entitlement to data regarding which patients should count as entitled to both Medicare and SSI benefits for purposes of the Medicare-SSI fraction. Ex. 1 at 4–5. Plaintiffs then sought EJR on these two issues. The record supports the Board's conclusion that—assuming the RFH for Issue 4 was written to encompass these two arguments about "entitlement" and who should be counted—Plaintiffs waived the issues in their Preliminary Position Papers for two simple reasons.

First, it is clear that Plaintiffs' Preliminary Position Papers did not explicitly address the arguments about the term "entitled to benefits" and about entitlement to data concerning which individuals should be counted. *See* Ex. 1 at 4–10. Board Rule 25.1 requires that a provider's Preliminary Position Paper "state the material facts that support" each issue raised, "[i]dentify the controlling authority (e.g., statutes, regulations, policy, or case law) supporting your position," and "[p]rovide a conclusion applying the material facts to the controlling authorities." *See* Ex. 1 at 8; Board Rules § 25.1. It is undisputed that nowhere within the Preliminary Position Papers did Plaintiffs expressly discuss either of these two arguments—nor the material facts which underpin them, the controlling statutory authority, or a conclusion applying those facts to the statutory

authority—despite the Preliminary Position Papers presenting a longer format in which Plaintiffs are tasked with fleshing out their arguments from the RFH.  *See* Board Rules §§ 25, 25.1.

Second, the only "authority" that Plaintiffs did identify in their Preliminary Position Papers, *Baystate*, did not deal with either contested issue.  *Baystate* instead dealt with whether CMS used the best available data in calculating the Medicare-SSI fractions and did *not* address the statutory interpretation or SSI entitlement data issues as to which Plaintiffs sought EJR.  545 F. Supp. 2d 20, 26 (D.D.C. 2008).  The Board therefore reasonably found in the alternative that Plaintiffs had waived the contested issues by failing to address them in their Preliminary Position Papers.

## C.

Plaintiffs also seek mandamus relief, alleging that the Board owed them a "non-discretionary, ministerial duty to hear [their] properly filed and pending appeals" but "improperly avoided its duty when it acted contrary to facts and law and unilaterally dismissed [their] properly filed and pending appeals."  Compl. ¶¶ 67–68.

To obtain mandamus relief, Plaintiffs must show: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  Plaintiffs did not move for summary judgment on this claim, *see generally* Pls.' Mot., but Defendant's cross-motion seeks resolution of the issue in its favor, Def.'s Mem. at 30–31.

Plaintiffs' request for a writ of mandamus clearly fails on the merits.  An adequate alternative remedy plainly exists: Under the APA, the court is entitled to "compel agency action unlawfully withheld or unreasonably delayed" or to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law." 5 U.S.C. § 706(1), (2)(a); *see Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) ("[T]he standards for obtaining relief" under § 706(1) of the APA and the Mandamus Act are "essentially the same."); *Navajo Nation v. Azar*, 302 F. Supp. 3d 429, 436 n.4 (D.D.C. 2018) ("An adequate alternative remedy is available to the [plaintiff] because the Administrative Procedure Act empowers district courts to 'compel agency action unlawfully withheld or unreasonably delayed.' 5 U.S.C. § 706(1)."). Because Plaintiffs can seek—and, indeed, have in this very lawsuit sought—relief under the APA, Plaintiffs' request for mandamus relief clearly falls away.

## IV.

For the foregoing reasons, the court grants Defendant's Cross-Motion for Summary Judgment, ECF No. 18, and denies Plaintiffs' Motion for Summary Judgment, ECF No. 16. A final, appealable order accompanies this Memorandum Opinion.

Dated: September 30, 2022

Amit P. Mehta
United States District Court Judge